U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 4 2009

CLERK, U.S. DISTRICT COURT
By _____
         Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TERRENCE EYLES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:08-CV-577-A |
| | § | |
| ULINE, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion for summary judgment filed by defendant, Uline, Inc., as to all claims filed against it by plaintiff, Terrence Eyles. Plaintiff filed his response, and defendant submitted its reply. Having considered the motion, the response, the reply, the summary judgment record, and pertinent legal authorities, the court concludes that the motion should be granted.

I.

Plaintiff's Claims

Plaintiff initiated this action through the filing of his original complaint on September 25, 2008, alleging that defendant retaliated against him for engaging in activity protected by the Fair Labor Standards Act ("FLSA"), in violation of 29 U.S.C. § 215(a)(3). On December 4, 2008, plaintiff filed his first amended

complaint, adding a claim for failure to pay wages in accordance with the overtime provisions of the FLSA, 29 U.S.C. § 207.

II.

## The Motion for Summary Judgment

Defendant contends that it is entitled to summary judgment as to plaintiff's claim for unpaid wages because (1) his claim is really one for "gap time" pay and, because he did not work in excess of forty hours per week, he is owed no overtime pay; and (2) defendant's method of rounding is in compliance with Department of Labor ("DOL") regulations and plaintiff is thus due no unpaid wages. As to plaintiff's retaliation claim, defendant argues that summary judgment is proper, as (1) he cannot establish a prima facie case of retaliation because he failed to engage in any FLSA-protected activity prior to his discharge; (2) defendant had legitimate, non-retaliatory reasons for his discharge; and (3) plaintiff in any event cannot prove defendant's reasons are a pretext for retaliation.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment

2

record:

Defendant is a catalog company that sells and distributes shipping supplies. Plaintiff began his employment with defendant in October 2005, holding various positions throughout the course of his employment, including picking parts ordered by, and packing them to be shipped to, customers; loading trucks in the Federal Express and UPS departments; and counting, verifying, and checking inventory discrepancies as a cycle counter.

While working picking parts, plaintiff had a number of errors wherein he pulled and shipped the wrong items from inventory, resulting in customer complaints. Defendant placed plaintiff on two performance improvement plans related to his errors. Although plaintiff improved his error rate, it was still above the level considered acceptable by the company.

In January 2007, defendant issued to plaintiff an "Attendance Warning Notice" due to his having acquired seven unscheduled absences, and a "Warning Notice" resulting from an occasion where plaintiff had scheduled a week's vacation, then changed his mind, worked for a few days, then failed to report to work on the final, previously scheduled vacation day, without informing defendant he was going to use that vacation time after all. The Warning Notice cautioned plaintiff that "[f]urther

violations of policies will result in disciplinary action up to and including immediate termination of employment." Def.'s App. at 43.

On February 15, 2007, plaintiff sent an email to the company president, with a copy to the Chief Executive Officer, wherein he stated that he had "hard evidence" that management was "manipulating the system" so as to "cheat" pickers by not giving proper credit for orders. Def.'s App. at 48. Plaintiff described this behavior as "stealing" and claimed that management could "cheat" at will. Id. Prior to sending this email to the president, plaintiff never brought the matter to the attention of his supervisor or the branch manager, Jim Henegar ("Henegar"). Plaintiff later admitted he had no basis for his allegations, and also admitted that the number of orders picked had no effect on his wages. Henegar discussed the matter with plaintiff after learning of the email and told plaintiff to bring any future concerns about the workplace directly to him.

At the time of his discharge from employment, plaintiff worked a shift from midnight until 8:30 a.m. Defendant's employees clocked in and out of their shifts using a time clock. The time-keeping system rounded each employee's time to the nearest fifteen-minute interval. Thus, an employee clocking in or

4

out at 12:07 would be shown to have clocked in or out at 12:00, while one clocking in or out at 12:10 would be shown to have clocked in or out at 12:15. During his shift on March 13, 2007, a co-worker showed plaintiff a memorandum (the "Memo") containing minutes of a managers' meeting. The Memo was located in a tray in the bottom of a group of three or four stacked trays[1] in an office where plaintiff and others obtained their daily work assignments. The pertinent portion of the Memo states:

> Andy McKenna-Warehouse Manager
> - Employees clocking out 5-7 after end of their shift.
>   - Example: Shift ends at 6:00, employee punches out at 6:23 - this gives them 1/2 hour OT. If the out punch is adjusted to 6:22 pm it only gives them 1/4 hour OT.
>   - Depending on the circumstance, this time can potentially give that employee OT. We've been adjusting some of the time sheets that are affected by this but employees are starting to question their managers about it. I let the MGRS know that the system will automatically average the early punches with the late. While not exactly true, we are doing it to help your OT numbers.

Pl.'s App. at 38. After reading the Memo, plaintiff told Johnny Flores ("Flores"), the maintenance manager, that he thought the company was stealing and lying about it. After his conversation

---

[1] The parties refer to these stacked trays as a "paper tower."

5

with Flores, plaintiff copied the Memo, personally handed it to a few employees, and put the Memo in other employees' lockers.

Upon learning that plaintiff had copied and distributed the Memo without authorization, Andy McKenna, the warehouse manager, suspended him. On March 14, 2007, Henegar terminated plaintiff's employment.

Following the termination of his employment, plaintiff filed a charge of discrimination with the EEOC, claiming retaliation on the basis of race, and also filed a complaint with the DOL. Although the EEOC apparently dismissed the charge,[2] the DOL investigated and found that defendant had a practice of adjusting employees' time punches by rounding down the time punch one to five minutes, resulting in a decrease in the amount of overtime paid to the employee. The DOL concluded that defendant's rounding practice violated the FLSA. Defendant agreed to pay the amount of back pay, as calculated by the DOL for a two-year period, to the affected employees, including $71.67 the DOL concluded was owed to plaintiff. Although the DOL sent plaintiff a form indicating the amount due him, he never signed and returned the form and consequently did not receive the unpaid overtime.

---

[2]The summary judgment record contains no evidence of action taken by the EEOC in response to plaintiff's charge of discrimination. This issue is immaterial, as plaintiff's charge to the EEOC is not before the court.

IV.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must

"identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

V.

Analysis

A.  Plaintiff's Claim for Unpaid Overtime

The FLSA requires that an employer compensate its employees engaged in commerce for all hours worked over forty each week at the rate of one and one-half times their regular rate. 29 U.S.C. § 207(a)(1). Accordingly, plaintiff, in order to establish a claim for unpaid overtime under the FLSA, must prove that he worked in excess of forty hours per week but that defendant failed to pay him at one and one-half times his hourly rate for all hours worked over forty.

The court finds it need not dwell long on plaintiff's claim for unpaid overtime. Upon completion of its investigation, the DOL concluded that a number of defendant's employees, including

8

plaintiff, were entitled to be compensated for unpaid overtime. Plaintiff's unpaid overtime, calculated by the DOL, amounted to $71.67. In his deposition plaintiff admitted that he did not disagree with the DOL's calculation, and in his summary judgment response he neither disputes the DOL's calculation nor offers summary judgment proof of an alternative amount due him.[3] Although defendant protests that if the court accepts the DOL's investigation and conclusion it will need to "begin the process of noticing the [investigator's] deposition and getting the motion to quash heard by the Court," Def.'s Reply at 2 n.1, defendant has submitted nothing that would cause the court to doubt the reliability of the DOL's investigation report or its conclusion that plaintiff is owed $71.67 in unpaid overtime. See, e.g., Franklyn v. Vista Del Mar, 1991 WL 268927 (9th Cir. Dec. 13, 1991)(holding DOL report calculating plaintiff's unpaid overtime compensation admissible under Rule 803(8)(C) of the Federal Rules of Evidence). Accordingly, the court concludes

---

[3] Plaintiff adduces summary judgment evidence showing the times defendant rounded down his punch-out time, thus decreasing the amount of overtime he would receive. By plaintiff's calculations defendant owed him 2.5 hours of unpaid overtime. Neither of the parties has offered evidence of plaintiff's hourly rate at the time of his discharge, preventing the court from calculating the amount plaintiff claims he is due. As plaintiff does not claim he is owed more than $71.67, the court need not address this matter further.

there is no issue of material fact that the amount of unpaid overtime due plaintiff is $71.67.

Defendant apparently disagrees with the DOL's conclusion, arguing that its timekeeping practices--specifically, rounding and changing time records--comply with DOL regulations set forth in 29 C.F.R. § 785.48(b). That section allows for rounding an employee's starting and stopping time to the nearest five minutes, one-tenth, or one-quarter of an hour, assuming that the rounding "averages out so that employees are fully compensated for all the time they actually work." Id. The regulations include the caveat that "this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." Id. The summary judgment evidence shows that defendant's practice encompasses only rounding down, so that over time, plaintiff was not paid for all the time actually worked. Defendant, while defending its rounding practices, has adduced no summary judgment evidence showing otherwise.

The court likewise finds little merit in defendant's attempt to characterize plaintiff's overtime claim as one for "gap time," which it describes as "time that is not covered by the overtime

provisions of the FLSA (because it does not exceed the 40 hour per week threshold) and is not covered by the minimum wage provisions because the employee earns more than minimum wage." Def.'s Br. at 9 (citing Adair v. City of Kirkland, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999)). Defendant offers little in support of its "gap time" argument, leading the court to conclude that defendant has failed to show that plaintiff's claims are indeed claims for "gap time" or that, on this issue, it is entitled to judgment as a matter of law.[4]

B.  Plaintiff's Retaliation Claim

To prevail on his claim of retaliation in violation of the FLSA, plaintiff must set forth a prima facie case similar to that required in retaliation cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), showing (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action. Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 624 (5th Cir. 2008). The employer must then articulate a legitimate, non-retaliatory

---

[2]Much of defendant's argument appears based on the fact that plaintiff worked 37.5 hours per week but was regularly paid for 40, leaving a 2.5 hour "cushion" of pay for time not worked. However, defendant cannot rely on the "cushion" to absolve it of liability for hours worked over forty, as the FLSA proscribes offsetting overtime wages with paid lunch periods. 29 U.S.C. § 207(h); Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 903, 913-14 (9th Cir. 2004).

11

reason for the adverse action, shifting the burden back to plaintiff to demonstrate that the proffered reason is a pretext for retaliation. Id.

The FLSA prohibits an employer from discharging or in any manner retaliating against an employee who has

> filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). The only inquiry here is whether plaintiff filed a complaint. Defendant contends that plaintiff's actions of handing out the Memo to some co-workers and placing copies of it in other employees' lockers falls into the category of "generalized grumblings" that fail to rise to the level of protected activity. On the other hand, plaintiff characterizes this activity as "stepp[ing] outside of his role as an employee by actively assisting other employees [to] assert their rights under the FLSA and/or by otherwise engaging in activity" that could be perceived as an assertion of FLSA rights. Pl.'s Br. at 16.

The court concludes that plaintiff's acts of copying the Memo, handing it to some coworkers and placing it in others' lockers, do not rise to the level of protected activity as

12

contemplated by the FLSA. Although plaintiff personally handed the Memo to a few coworkers, he admittedly did not discuss it with most, but rather decided to let them "make up their own minds." Pl.'s App. at 23. The Fifth Circuit, in considering the circumstances construed by other courts as informal complaints, cites to cases where an employee actually voiced concerns to his or her school district employer; to a company's co-owner and a foreman; and, in two cases, to the company president. Hagan, 529 F.3d at 626 (internal citations omitted). In none of these cases did the courts construe an employee's act of copying a document and distributing it to coworkers as an informal complaint, and plaintiff directs the court to no such authority. The court likewise declines to find such activity constitutes the filing of a complaint under the FLSA.

Plaintiff's conversation with Flores, the maintenance manager, is of a different character. Although not in plaintiff's chain of command, Flores was a member of management. Plaintiff showed Flores the Memo and said he thought the company was "stealing" and "lying about it." Pl.'s App. at 23. The court finds such sufficient to constitute the filing of an informal complaint.

13

Assuming that plaintiff can establish the remaining elements of his prima facie case, defendant has articulated a legitimate, non-discriminatory reason for his termination: plaintiff's misconduct, including misappropriating and distributing the Memo.[5]

With the burden shifted back to him, plaintiff asserts as evidence of pretext the close temporal proximity between plaintiff's protected activity and his discharge. "However, temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason." Aryain v. Wal-Mart Stores Texas LP, 534 F.3d 473, 487 (5th Cir. 2008). Plaintiff also asserts as evidence of pretext the "multiple, inconsistent explanations" given by defendant as the reason for plaintiff's termination. Pl.'s Br. at 19. Plaintiff relies on the fact that Henegar first told plaintiff at the termination meeting that he was not required to give a reason for the termination, then sent him a letter stating that his termination was due to "employee misconduct." Pl.'s App. at 68. Later, in its response to plaintiff's EEOC charge, the company stated the termination was

---

[5]Because the court concludes that plaintiff's actions in taking, copying, and distributing the Memo fail to constitute protected activity, defendant's assertion of these actions as a reason for plaintiff's termination cannot constitute direct evidence of retaliation, as argued by plaintiff.

14

due to plaintiff's "misappropriation and distribution of the Confidential Memo." Id. at 66. Finally, in Henegar's deposition, he indicated the reason for the termination was due to the culmination of plaintiff's misconduct over the previous two years.

Plaintiff's assertion that inconsistent explanations can be evidence of pretext is a correct statement of the law. Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 147 (2000); Nasti v. CIBA Specialty Chem. Corp., 492 F.3d 589, 594 (5th Cir. 2007). However, the court does not agree with plaintiff's characterization of defendant's reasons as "inconsistent."

In its response to the EEOC charge, defendant repeatedly states plaintiff was discharged due to misconduct. The response also outlines plaintiff's history of performance and attendance issues. This is not inconsistent with Henegar's explanation, both in his deposition and in his affidavit submitted in support of defendant's summary judgment motion, that plaintiff was discharged due to his misconduct, including a cumulation of his conduct over the previous two years. Plaintiff was discharged for misconduct--including taking a Memo not addressed to him, copying it, and distributing it without authorization to other employees. The explanations in the response to the EEOC charge, Henegar's

15

deposition testimony, and his affidavit coordinate rather than conflict with each other, and any differences are insufficient to raise a genuine issue of material fact. See Nasti, 492 F.3d at 594.

Plaintiff's reliance on Gee v. Principi, 289 F.3d 342 (5th Cir. 2002), is misplaced. Rather than offering "inconsistencies" in the employer's explanation, the plaintiff in Gee adduced summary judgment evidence showing that the key decision maker lied about several significant events related to plaintiff's non-selection for a position. Other cases relied on by plaintiff, and others in this circuit, offer similar scenarios. See, e.g., Laxton v. Gap Inc., 333 F.3d 572 (5th Cir. 2003)(decision maker made false allegations to support termination); EEOC v. Sears Roebuck & Co., 243 F.3d 846, (4th Cir. 2001)(employer offered multiple, different, unrelated reasons over a period of time for plaintiff's non-selection). None of the reasons offered by defendant have been alleged or shown to be false. Although plaintiff argues that some of the prior disciplinary issues upon which Henegar relied occurred two years previously, the disciplinary warnings and the inflammatory email all occurred within a few months of the termination. Nor does plaintiff

provide authority that considering prior disciplinary issues when terminating an employee is evidence of pretext.

The court is mindful that the "ultimate burden of persuading the trier of fact that the defendant retaliated against the plaintiff remains at all times with the plaintiff." Gee, 289 F.3d at 348 (internal brackets, citations, & quotation marks omitted). The court finds that plaintiff has failed to adduce evidence sufficient to carry his burden.

## VI.

### Order

For the reasons discussed above, the court concludes that defendant's motion for summary judgment should be granted, except as to the $71.67 defendant has already tendered to plaintiff.

Therefore,

The court ORDERS that defendant pay plaintiff the amount of $71.67.

The court further ORDERS that all other claims and causes of action asserted by plaintiff, Terrence Eyles, against defendant, Uline, Inc., be, and are hereby, dismissed with prejudice.

SIGNED September 4, 2009.

_____
JOHN McBRYDE
United States District Judge

17